UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JACKIE MATTISON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:16-cv-00037-NCC |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Jackie Mattison ("Plaintiff" or "Mattison") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. No. 12) as well as a reply brief (Doc. No. 18). Defendant has filed both a brief in support of the Answer (Doc. No. 17) and a sur-reply brief (Doc. No. 21). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. No. 7).

Plaintiff is a 36 year-old male who, at the time of the hearing in this matter, resided in a house with his mother and grandmother in Summersville, Missouri. (Tr. 32-33, 140). He had never lived independently. (Tr. 33). Plaintiff stands 5'4" tall and weighed 270 pounds. (Tr. 35).

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

He completed high school with the help of Special Education. (Tr. 35, 47). In sixth grade, Plaintiff scored a Verbal IQ of 66, a Performance IQ of 57, and a Full Scale IQ of 58. (Tr. 202). At that time, he also scored an Adaptive Behavior Quotient of 88 on the Adaptive Behavior Evaluation Scale ("ABES"), with a margin of error of ±5.53, with a "task-related behavior" subscale score of 6. (Tr. 203). Plaintiff can read and write and can do simple arithmetic with some difficulty. (Tr. 35). He is able to use a cell phone, send text messages to his mother, and had used a computer at the public library to look up "dog stuff." (Tr. 36). He passed his driver's license test on his third try, with someone reading him the exam. (Tr. 49-50). He helps with the housework, cooks a little, washes dishes, helps with the laundry and mows the lawn. (Tr.45-46). He is able to go grocery shopping independently and he drives his grandmother to appointments if his mother is working, as his grandmother had suffered two strokes. (Tr. 33, 46-47).

Plaintiff suffers from metabolic acidosis (renal tubular acidosis) with hypokalemia (low potassium). (Tr. 219-220). He also has an enlarged right ventricle in his heart, with mild thickening of his mitral valve leaflets. (Tr. 293-294). He describes the symptoms as having "spells" where he feels a heavy pressure on his chest, racing pulse, dizziness, blurred vision and difficulty moving his legs. (Tr. 51-53). He takes potassium supplements for his condition. (Tr. 44).

Plaintiff has held several jobs. From 2007 to 2009, he worked as a laborer for the Canal Barge Company making approximately $18,000 per year. (Tr. 165). He left that job due to his hypokalemia, which caused him to miss shifts. (Tr. 42). Plaintiff also worked for two months at the McBride Saw Mill, owned by his uncle and cousin, making sure nothing fell in between the rollers or jammed them up. (Tr. 40, 43). He also worked helping with handling the animals at livestock auctions. (Tr. 38-39).

# I. PROCEDURAL HISTORY

Plaintiff filed his applications for DIB on January 31, 2013 and SSI on February 6, 2013 (Tr. 74-75). He alleged an onset date of September 1, 2003, later amended to September 1, 2009. (Tr. 30, 135, 139). In the instant matter, Plaintiff's claim was initially denied on May 9, 2013, and he filed a Request for Hearing before an Administrative Law Judge ("ALJ") on June 4, 2013 (Tr. 78-87).

An ALJ held a hearing on May 1, 2014. (Tr. 25). During the course of that hearing, Plaintiff's attorney at the time requested that the ALJ further develop the record as to Plaintiff's current intelligence scores, as the last relevant testing had been conducted when Plaintiff was in sixth grade. (Tr. 29-30, 200-209). The ALJ stated he would "take that under consideration [.]" (Tr. 30). After the hearing, by decision ("Decision") dated August 4, 2014, the ALJ found Plaintiff not disabled (Tr. 10-21). On December 29, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. 1). As such, the ALJ's Decision stands as the final decision of the Commissioner.

# II. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as

"any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC, and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, always remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d

4

926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

5

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

### III. DECISION OF THE ALJ

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2015, and that although he had held several jobs after the alleged onset date of September 1, 2009, these jobs did not rise to the standard for substantial gainful activity for the purposes of his Decision. (Tr. 12-13). The ALJ further found that he had three severe impairments: metabolic acidosis, obesity and a history of learning disability. (Tr. 13).

The ALJ also found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. part 404, Subpart B, Appendix 1. (Tr. 13). Specifically at issue in this case is the ALJ's finding that Plaintiff did not qualify under Listing 12.05(c), Intellectual Disability (formerly "Mental Retardation"). The ALJ noted that Plaintiff's aforementioned childhood IQ testing fell within the range cited by the listing. (Tr. 15). However, the ALJ found that there was "no evidence that [Plaintiff] has the deficits in adaptive functioning required to meet Listing 12.05." *Id.* Specifically, the ALJ noted that Plaintiff is able to communicate with others verbally, read and write. *Id.* Further, he can attend to his personal hygiene and household chores, shop at grocery stores and attend church. *Id.* Plaintiff also has regular social interaction with friends and family, was able to work in a semi-skilled job for three years and drives. *Id.* Later in the

Decision, he characterized Plaintiff's Adaptive Behavior Quotient score as "average." (Tr. 19). The ALJ did not address either the margin of error for the Adaptive Behavior Quotient or the subscale score indicating a deficit in adaptive behavior.

The ALJ then formulated an RFC finding that Plaintiff was capable of performing "medium work" as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that he cannot climb ladders or scaffolds, and must avoid heights or machinery. (Tr. 16). Plaintiff is also limited under this RFC to jobs that involve simple instructions and non-detailed tasks, which require that he maintain concentration and attention for no more than two hours at a time over an eight-hour period, and that he not be subject to an hourly production quota. *Id.*

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause "some" of the alleged symptoms, but that Plaintiff's statements as to the intensity, persistence and limiting effect of those symptoms are "not entirely credible." (Tr. 17). Specifically, the ALJ found that Plaintiff's acidosis and obesity "cause only slight limitations." (Tr. 18). The ALJ did not clarify why he found these impairments caused only "slight limitations" when discussing the RFC, when he described each as "severe" in Step 2 of the evaluation, defined as an impairment which "significantly limits [claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c).

The ALJ found that the medical records suggested that Plaintiff's physical issues were relatively under control, both in the content of the records and the relative infrequency of visits to healthcare providers. (Tr. 17-18). The ALJ also found that Plaintiff's ability to perform the daily activities described above were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. 18). The RFC was formulated to take

7

into account his occasional dizziness by limiting him to jobs where he would never climb ladders, never climb scaffolds, and never be exposed to heights or machinery hazards. *Id.*

Additionally the ALJ found that Plaintiff's mental impairments were not disabling. Acknowledging the test scores from his youth which "would normally indicate that the claimant has mild mental retardation and would be unable to work at the level of substantial gainful activity or live independently," the ALJ stated that Plaintiff "appears to have made dramatic improvement." (Tr. 19). Specifically, he noted that Plaintiff was only in Special Education classes for 226 minutes per week in high school (versus 975 minutes in regular classes), and that his "only accommodations in the regular classes were for the claimant to have additional time for tests, have the exams read to him, having questions paraphrased, have strategic tutoring and engage in physical assignments rather than written assignments." *Id.* The ALJ also found that his prior work history for the Canal Barge Company and activities of daily living suggested that he could perform the simple tasks outlined in the RFC.

Based on the RFC and the resultant hypothetical question posed to a vocational expert at the hearing, the ALJ found that there were significant numbers of jobs in the national economy that Plaintiff could perform. (Tr. 20). Those jobs included laundry worker II (with 900 jobs in Missouri and 40,000 nationally), and packager (1,000 jobs in Missouri and 50,000 nationally). *Id.* As a result, the ALJ entered a finding of "not disabled." *Id.*

## IV. DISCUSSION

Plaintiff's primary contention in this matter is that the ALJ erred in finding that Plaintiff did not meet the criteria for Listing 12.05(c). "[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary….That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is

8

presumed unable to work and he is awarded benefits without a determination whether he actually can perform his own prior work or other work." *Lott v. Colvin*, 772 F.3d 546, 549 (8th Cir. 2014) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)). As discussed above, Listing 12.05 states: "Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. In addition to satisfying the requirements in the introductory paragraph, the claimant must also satisfy one of four sets of requirements—A, B, C, or D. *Lott*, 772 F.3d at 549. Listing 12.05C requires: "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C). To meet Listing 12.05C, then, a claimant must demonstrate: (1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of "significantly subaverage general intellectual functioning with deficits in adaptive functioning" before age twenty-two; and (3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006).

As noted above, Plaintiff scored a Verbal IQ of 66, a Performance IQ of 57, and a Full Scale IQ of 58. (Tr. 202). He also scored an Adaptive Behavior Quotient of 88 on the Adaptive Behavior Evaluation Scale, with a margin of error of ±5.53. (Tr. 203). The Adaptive Behavior Quotient is intended to measure "the effectiveness or degree with which the individual meets the standards of personal independence and social responsibility expected of his age or cultural group." *Id.* A range of 85-115 is considered normal, meaning that the margin of error could put him under the score indicating a deficit in adaptive behavior, or could put him well clear of that

line. On the "task-related behavior" subscale, Plaintiff scored a 6, two standard deviations below the mean of 10. *Id.* "Subscale standard scores which are more than one standard deviation below the mean…constitute a serious weakness or deficit in adaptive behaviors." *Id.*

The Eighth Circuit's opinion in *Lott* is instructive in this case. There, the Court adopted the plaintiff's reasoning that allowing an ALJ to find that an otherwise-qualifying claimant did not have a deficit in adaptive function because they were able to perform basic activities of daily living, or because prior to the onset of an additional problem they had some work history

> would make it practically impossible for noninstitutionalized mentally-retarded claimants to meet listing 12.05C because ALJs will nearly always be able to point to the performance of rudimentary activities of daily living—even though such activities do not, in fact, show that a person is not mentally retarded.... Listing 12.05C assumes that the mildly-retarded can work if their only impairment is mild mental retardation. Disability is based on mild mental retardation plus an additional physical or mental impairment that imposes a significant limitation on a person's ability to work

772 F.3d at 551.

In the instant matter, the ALJ relied on precisely such factors in finding that Plaintiff did not have any deficit in adaptive functioning. The only somewhat-direct evidence of Plaintiff's adaptive abilities are the Adaptive Behavior Quotient and subscale scores from the ABES test he took at age 12. The ALJ failed to address either the margin of error on the Adaptive Behavior Quotient score or the task-related-behavior subscale specifically indicating a deficit in adaptive behavior. While the ALJ contends that Plaintiff has made "dramatic improvement" from the level of intellectual function and adaptation he displayed on those tests, he cites no support other than factors which the Eighth Circuit has agreed would functionally scuttle the claim of any claimant with an intellectual disability who is not confined to a mental institution. While the ALJ may be correct that Plaintiff has made sufficient improvement as to take him out of Listing 12.05(c), the record is not sufficiently developed to provide substantial evidence to

support that conclusion. Plaintiff's counsel at the hearing requested that the ALJ order further testing of Plaintiff to update the existing scores, and the ALJ stated he would take that under consideration. In this instance, the record would have benefited. "Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). As the acceptable forms of evidence were contradictory, essentially inconclusive and/or significantly out of date, updated testing of both Plaintiff's intelligence and his adaptive behaviors is indicated.

Further, on remand, the ALJ should resolve the internal discrepancy in the Decision as to whether Plaintiff's other impairments were severe or slight. The severity of these other issues determines whether they are impairments which cause "additional and significant work-related limitation of function" sufficient to meet the requirements of Listing 12.05(c). As noted by the Eighth Circuit in *Cook v. Bowen,* severe impairment under Step 2 is essentially co-extensive with Listing 12.05(c)'s requirement, as the definition of "severe impairment" is "any impairment or combination of impairments which significantly limits physical or mental ability to do basic work activities." 797 F.2d 687, 690 (8th Cir. 1986).

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole does not support the Commissioner's decision, as written by the ALJ, that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief which Plaintiff seeks in his Complaint and Brief in Support of Complaint is **GRANTED**. (Doc. No. 1 and 12).

**IT IS FURTHER ORDERED** that a Judgement of Reversal and Remand will issue contemporaneously herewith remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

**IT IS FURTHER ORDERED** that upon entry of the Judgement, the appeal period will begin which determines the thirty (30) day period in which a timely application for attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, may be filed.

Dated this 28th day of March, 2017.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE